UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELDER BARBOSA,<br><br>Petitioner<br><br>v.<br><br>BRUCE GELB as Superintendent of<br>the Souza-Baranowski Correctional Center,<br><br>Respondent. | Civil Action No. 12-10764-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              **August 6, 2014**

### I.  Introduction

Petitioner Helder Barbosa ("Barbosa") has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C § 2254 alleging that the state court denied him his Sixth Amendment right to confrontation. D. 1. Respondent Bruce Gelb opposes the Petition, arguing that Barbosa has failed to show that the state-court adjudication of his claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. For the reasons set forth below, the Court DENIES Barbosa's Petition.

### II.  Background

#### A.  Factual and Procedural History

On November 15, 2004, a Suffolk County grand jury indicted Barbosa with murder in the first degree, armed assault with intent to murder, assault and battery with a dangerous weapon

1

and unlawful firearm possession. Pet. at 1; S.A. at 30.[1] All of these charges related to the shooting of Edward Serret and Geraldo Carbuccia on the night of October 6, 2004 in Roxbury, Massachusetts. Commonwealth v. Barbosa, 457 Mass. 773, 774 (2010). Serret died from his injuries. Id. at 775. The prosecution's theory of the case was that Barbosa shot Serret and Carbuccia because Carbuccia had witnessed Barbosa commit another murder. Id. at 778.

Shortly after the shooting, between 8:00 and 8:30 p.m., Boston Police officers encountered Barbosa in the area of the shooting, whom the officers arrested after Barbosa attempted to flee. Id. at 776. After 9:00 p.m. that night, Detective Dennis Harris interviewed Barbosa at police headquarters after reading Barbosa his Miranda warnings. Id. at 777. Although Barbosa stated that he ran from the officers because he had a warrant for a motor vehicle infraction, a search of the police database revealed that there was no warrant outstanding. Id.

### B. Relevant Proceedings in Superior Court

At trial, the prosecution introduced evidence that Carbuccia had told investigators that he had witnessed Barbosa fatally shoot another man in September 2004. Id. at 778.

Julie Lynch, a criminalist for the Boston Police Department described DNA samples taken from Barbosa's left boot and testified to the significance of Serret's inclusion as a "possible source of the DNA." Id. at 779. She further testified that the DNA profile found on Barbosa's boot could be found in one in thirty-five quadrillion Caucasians, one in fourteen quadrillion African-Americans, and one in 7.1 quadrillion South Eastern Hispanics. Id. Lynch also testified as to the process that DNA examiners use to test DNA samples, but did not

---

[1] All references to the record will be cited as follows: Barbosa's Petition ("Pet." or D. 1); Barbosa's Memorandum in Support of Petition ("Mem." or D. 22); Barbosa's Supplemental Answer ("S.A."); and Trial Transcripts ("Tr."), submitted to the Court.

personally participate in the testing process. Id. at 782. Another examiner, Cheryl Delatore, performed the DNA testing on the samples and prepared a table showing the characteristics of the DNA profiles, which Lynch used during her direct examination. Id. at 781-82. Lynch did, however, review Delatore's work and signed Delatore's final report regarding the testing that Delatore had performed. Id. at 782. Moreover, she used Delatore's work to form her own independent opinion about the nature of the results. Id. at 781. A jury convicted Barbosa on all charges. Id. at 774 & n. 1.

### C. Barbosa's Appeal to the Supreme Judicial Court

Barbosa timely appealed. S.A. at 13. On appeal, Barbosa argues that Lynch's testimony violated his Sixth Amendment right to confrontation and:

> that the trial judge erred in admitting evidence of (1) an earlier, uncharged murder, allegedly committed by the defendant; (2) an out-of court statement by Carbuccia and Serret that they had witnessed the earlier, uncharged murder; (3) the defendant's unequivocal, post-Miranda denials of guilt; and (4) an autopsy photograph depicting Serret's injuries. Finally, the defendant claims that the judge did not adequately instruct the jury with respect to (1) the limited permissible use of the uncharged murder evidence, and (2) the failure of the police to tape record its postarrest interrogation of him.

Barbosa, 457 Mass. at 775. The Supreme Judicial Court determined that Barbosa's confrontation rights were not violated by the admission of Lynch's opinion, but were violated by Lynch's testimony as to Delatore's findings and opinion and the admission of a table prepared by Delatore showing the DNA characteristics of the four tested samples. Id. at 786. However, the court found that this was not a reversible error because Barbosa did not preserve this objection at trial and in light of the other "overwhelming" evidence against Barbosa. Id. at 792-93. In addition, the court found that the trial judge did not err by admitting Carbuccia's testimony about Barbosa's prior alleged murder and an autopsy photograph. Id. at 793, 801. The Supreme Judicial Court held that the trial court correctly instructed the jury regarding the limited use of

3

the uncharged murder evidence, but erred in giving only one part of an instruction pertaining to the alleged recording of Barbosa's interrogation, but that the error was not prejudicial. Id. at 795-96. Finally, the Supreme Judicial Court held that Barbosa's post-Miranda denials of guilt should have been excluded but that this error (which was not objected to at trial) did not create a substantial likelihood of a miscarriage of justice. Id. at 800.

## III. Discussion

### A. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court reviews Barbosa's application for a writ of habeas corpus to determine if the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Clarke v. Spencer, 582 F.3d 135, 140 (1st Cir. 2009). This standard is "'difficult to meet' because the purpose of [the statute] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, __ U.S. __, 132 S. Ct. 38, 43 (2011) (internal citations omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent where "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or where "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of

4

the particular state prisoner's case." Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002). Because the statute "uses the word 'unreasonable,' as opposed to 'erroneous' or 'incorrect,' a state court's application of federal law must go beyond simple error to justify issuance of the writ of habeas corpus." Morgan v. Dickhaut, 677 F.3d 39, 46 (1st Cir. 2012) (citing Williams, 529 U.S. at 411).

**B.     The Superior Court's Admission of Lynch's Testimony Does Not Warramt Habeas Relief**

*1   Admission of Lynch's Expert Opinion Did Not Violate Clearly Established Federal Law*

Barbosa argues that the admission of Lynch's expert opinion that Serret was a possible source of the DNA that police recovered from Barbosa's boot was a violation of his right to confrontation. "Under section 2254(d)(1), only Supreme Court precedent in effect at the time of the state court adjudication on the merits counts as 'clearly established Federal law.'" Nardi v. Pepe, 662 F.3d 107, 110 (1st Cir. 2011) (quoting Greene, 132 S. Ct. at 43-44). At the time of the Supreme Judicial Court's decision, the pertinent cases regarding the Confrontation Clause were Crawford v. Washington, 541 U.S. 36 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). Barbosa's reliance on Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705 (2011), and Williams v. Illinois, __ U.S. __, 132 S. Ct. 2221 (2012), is therefore inapposite, because the Supreme Judicial Court affirmed Barbosa's convictions on September 7, 2010, prior to the Supreme Court's ruling in either case. Taylor, 529 U.S. at 412 ("clearly established federal law" only "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision").

In Crawford, the Supreme Court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is one the Constitution

5

actually prescribes: confrontation." Crawford, 541 U.S. at 68-69. The Crawford court did not provide a "comprehensive definition" of "testimonial," but acknowledged that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68. The Supreme Court later extended Crawford to apply to affidavits prepared in state laboratories that attest to the nature and quantity of controlled substances. Melendez-Diaz, 557 U.S. at 311.

In Nardi, the First Circuit was faced with a question similar to that which faces this Court. In that case, the Supreme Judicial Court held that a doctor's opinion in reliance on an autopsy report was not in violation of the Confrontation Clause, because the doctor provided his own opinion, which rested on "traditional and permissible sources of expert knowledge" and the defense was free to cross examine him about the foundation of that opinion. Nardi, 662 F.3d at 109 (citing Commonwealth v. Nardi, 452 Mass. 379, 388-89 (2008)). The First Circuit, applying Crawford, (Melendez-Diaz was decided after the SJC's decision in Nardi)[2] agreed with the Supreme Judicial Court hat forensic laboratory reports were not clearly testimonial under the operative law. Nardi, 662 F.3d at 112. Moreover, the First Circuit went on to conclude that even if the reports were testimonial, it would be "unclear whether . . . the admissibility of in-court expert testimony that relied in some measure on such a report would be affected. In such a case, a witness exists who can be cross-examined; and a long tradition exists of allowing experts to rely on hearsay where it is common practice in the profession to rely upon such evidence." Id.

---

[2]In Nardi, the First Circuit concluded that "Melendez-Diaz and Bullcoming were decided *after* the SJC acted in this case, and the Crawford decision predating SJC review did not 'clearly establish' that forensic laboratory reports were barred as testimonial. . . . That close decisions in the later Supreme Court cases extended Crawford to new situations hardly shows the outcomes were clearly preordained." Nardi, 662 F.3d at 112.

6

(citation omitted). Ultimately, the court relied on the fact that Crawford did not "clearly establish" the testimonial nature of forensic reports. Id.

As an initial matter, and as in Nardi, federal law at the time had not "clearly established" a rule that compels a contrary outcome under the Confrontation Clause at the time of the SJC's decision in this case. Under these circumstances, the court cannot say that the state court "unreasonably applied" federal law. Taylor, 529 U.S. at 407.

More importantly, this Court agrees with the First Circuit in Nardi and the Supreme Judicial Court's decision here that there was nothing improper about admission of Lynch's own expert opinion itself, even as it relied upon work product from another chemist. Courts in this district have found that prior to Illiniois v. Williams, a case after the Supreme Judicial Court decided the appeal in this case, the Supreme Court had not considered "the extent to which an expert can rely on such out-of-court statements." United States v. de la Cruz, No. 01-10118-JLT, 2012 WL 769761, at *11 (D. Mass. Feb. 21, 2012) report and recommendation adopted, No. 01-10118-JLT, 2012 WL 773617 (D. Mass. Mar. 5, 2012) (denying motion to vacate pursuant to 28 U.S.C.§ 2255); see also Hensley v. Roden, No. 10-12133-RWZ, 2013 WL 22081, at *5 (D. Mass. Jan. 2, 2013) (finding that admission of expert's testimony based on autopsy report did not violate clearly established federal law, even in consideration of Melendez-Diaz). In light of the foregoing, this Court concludes that the admission of Lynch's own expert opinion did not violate clearly established law.

    *1. Reference to Delatore's Opinion and the Table Does Not Require Reversal*

Barbosa next argues that any reference to Delatore's opinion during Lynch's testimony and the admission of a table prepared by Delatore showing the characteristics of the DNA profiles recovered from Barbosa's boot and Serret's DNA profile violated his right to

confrontation. D. 22 at 40. The Supreme Judicial Court concluded that Barbosa's right to confrontation was violated when the Superior Court admitted the Delatore's table and reference to her opinion during Lynch's testimony. Barbosa, 457 Mass. at 786.

Even the SJC's conclusion that the admission of the table and opinion of Delatore violated Barbosa's right of confrontation, such admission did not have a "substantial and injurious effect" on Barbosa's trial. Fry v. Pliler, 551 U.S. 112, 120 (2007) (holding that a federal habeas court must evaluate the prejudicial influence of constitutional error in a state court criminal trial under the "substantial and injurious effect" standard described in Brecht v. Abrahamson, 507 U.S. 619 (1967)). This standard is more forgiving than the "harmless beyond a reasonable doubt" standard. Id. at 116. There was no substantial and injurious error where references to inadmissible evidence were cumulative of admissible evidence and there is overwhelming evidence of guilt. Brown v. Rednour, 637 F.3d 761, 762 (7th Cir. 2011); Moses v. Payne, 555 F.3d 742, 755 (9th Cir. 2009).

Here, admission of Delatore's table and opinion was cumulative of Lynch's properly admitted expert testimony. The chart and reference to Delatore's opinion corroborated Lynch's independent opinion that Serret was a possible source of the DNA found and introduced against Barbosa. In addition, the Commonwealth introduced the DNA evidence to demonstrate that Barbosa was nearby the scene of the murder. The Commonwealth, however, established this fact in other ways, namely through Carbuccia's testimony that Barbosa had shot him (even if he had initially denied during the investigation that he could identify the shooter), the fact that police discovered Barbosa near the scene shortly after the shooting and evidence of consciousness of guilt (namely, Barbosa's flight from police after his encounter with them shortly after the

shooting). Accordingly, the Court concludes that the admission of such evidence did not have a substantial and injurious effect on the outcome of Barbosa's trial.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Barbosa's petition for a writ of habeas corpus, D. 1.

**So Ordered.**

                                                           /s/ Denise J. Casper
                                                           United States District Judge